MARGARETTA WHERRY TREHERNE-THOMAS, Plaintiff, *v.* F. HUGH TREHERNE-THOMAS, Defendant.

Supreme Court, Special Term, New York County, June 16, 1942.

*George Gordon Battle*, for the plaintiff.

*McCanliss & Early*, for the defendant.

HOFSTADTER, J. This is an action for a separation on the ground of cruel and inhuman treatment. The parties were married in 1926 and there are two children, a girl of fourteen and a boy of seven. The defendant is a subject of Great Britain and the plaintiff is a citizen of the United States. After the marriage the parties made their home in Killay, Wales; and it is not even remotely suggested by either spouse that the relationship between them was other than harmonious during the entire period of cohabitation. Their peaceful existence was shattered by the commencement of the war.

In view of the then imminent danger of an invasion after the collapse of France, and also because of bombings in nearby Swansea which had aroused fears for the safety of the family, in June, 1940, the plaintiff and the children, with the express consent and approval of the defendant, left Wales for Canada to seek refuge. To secure permission to leave the plaintiff gave her pledge to the British authorities that she would not return within a six-month period and she also furnished an undertaking by her father guaranteeing the support of the children while abroad. After a short stay in Canada, the plaintiff and the children traveled to New York city where they now live in her father's home.

Husband and wife corresponded with almost daily frequency. Within a relatively short time after the departure of his family, the defendant apparently regretted the separation; and he began to urge his wife to return to Wales. Upon her refusal to do so, in his letters and cables the defendant charged the plaintiff with selfishness, disloyalty to him and the children, and, generally, with disregard of her marital duties. The plaintiff now seeks a judicial separation and the custody of the children on the sole ground that the statements in the written communications to her constituted a course of cruel and inhuman treatment. *No other acts are charged.*

It is well settled that incompatibility of temperament and differences of opinion giving rise to domestic infelicities are not ground for separation in this State; and we are instructed that " the test of cruel and inhuman treatment where no blows are struck or threatened should be applied with great caution." (*Pearson* v. *Pearson*, 230 N. Y. 141, 148. See, also, *Smith* v. *Smith*, 273 id. 380; *Morris* v. *Morris*, 260 App. Div. 6.) Neither the research of counsel nor my own studies has disclosed any case in the books of our State where statutory cruelty has been found based solely on an exchange of unpublished letters.

If the affirmance of the order of Special Term, which denied defendant's motion for summary judgment on the ground that issues of fact had been raised, may be deemed a holding by the Appellate Division that mere statements in *unpublished* letters from one spouse to another may constitute a sufficient predicate of cruelty, clearly it was not decided that these communications did constitute such cruelty, wholly apart from the context of the circumstances surrounding the exchange which might be adduced on a trial. Necessarily, the holding of the Appellate Division would be cast in the subjunctive mood — indicating the possibility, in juridical contemplation, that a cause of action might be thus established. Now that the record has been completely developed, and the circumstances are fully disclosed, the trial court must determine the issue tendered. And proceeding with the " great caution " enjoined upon me, I may not say, upon the whole record, that the defendant was guilty of cruel and inhuman treatment — legally speaking.

At most, his letters and cables indicate the existence of a misunderstanding between the parties as to the circumstances of the departure and the expected duration of the stay abroad; a lack of harmony and some denunciatory language occasioned by the difference of opinion as to whether the plaintiff and the children, or the plaintiff alone, should or could return to England. The husband needed his family and he was of the strong conviction that the dangers had decreased to such an extent that it was safe for them to return; he was fearful of the consequences of a separation of many years. The wife was equally insistent that the dangers which caused their departure were still real; that the risks of an ocean voyage through submarine infested waters was too great, and that in addition it would be impossible to receive permission from the authorities to return. Each felt the other was most unreasonable and inconsiderate in attitude; and in expressing their respective points of view indulged, not unnaturally perhaps, in harsh and incriminating language.

On the record the court does not presume to be able to assess blame with sure confidence. In deciding issues such as this, involving intimate personal relations, we dimly perceive other underlying impulsions, the vague shape of things unseen — imponderables — emerging from the vagaries of the mind and conditioned by the fallibilities of the human heart; beyond our capacity, as frequently beyond our competent province, to evaluate precisely and to resolve completely.

The attitude and expressions of the defendant must be viewed in the light of a mental reaction brought about by the stress of war conditions and the perplexity of the many additional obligations and duties undertaken by him in defense work. In view of the domestic difficulties confronting him (the care and upkeep of a large establishment with an inadequate staff and the housing of evacuees from metropolitan centers), it is understandable that the defendant would desire the help, comfort and companionship of his wife and family, and that he would look with foreboding on a separation of many years. On the other hand, it is also altogether understandable that the plaintiff would prefer that the children remain in a comparatively safe haven and decline to leave them to be reared by others. In any event, the importunities of the defendant to the end that his wife and family should rejoin him, based on what appears to have been a sincere love and affection for them, do not constitute such cruel and inhuman treatment for which the law of our State decrees separation. The defendant may have judgment dismissing the complaint on the merits, accordingly.

There remains the question of the custody of the children. Under section 1170-a of the Civil Practice Act, even though a decree of separation is denied, the court may, nevertheless, make such provision for the custody, care and maintenance of the children of the marriage as it deems proper.

To a great extent the matter is rendered academic as of this time. The father is in England — the children and mother are here. She is a fit guardian. Under existing circumstances there is no occasion to alter the *status quo* now. Provisionally only, the custody of the children will be continued in the plaintiff — until the further order of the court.

It is contemplated that in the absence of any substantial change in circumstances, the children shall remain here with their mother in her father's home until the termination of the war. Then, or sooner, if extraordinary circumstances not now anticipated should intervene, the defendant may apply for a different disposition of the matter of custody, as he may be advised. The defendant

will pay the sum of $200 a month for their care and maintenance. If he cannot forward that sum, due to currency regulations of Great Britain, he shall nevertheless deposit such sum to the credit of the plaintiff in her bank account in the Lloyds Bank, London, England.

Motion of plaintiff to strike out the affirmative defense is denied with an exception to the plaintiff. Motion to strike out Exhibits C1, C2, C3 and C4 is granted with an exception to the defendant.

The findings and conclusions of the court are sufficiently indicated herein; accordingly, all findings and conclusions submitted by the parties are refused except as found herein. Settle decree, which may provide for amendment at the foot thereof in respect to the matter of ultimate custody of the children.