In the Matter of the Construction of the Will of Anna Brener, Deceased. Sidney S. Levine, as Executor of Anna Brener, Deceased, Respondent; Max Katz of Toronto, Canada, Appellant; Max Katz of New York, Respondent.

First Department, February 14, 1961.

*Joseph Goldman* for appellant.

*Bernard Lefkowitz* for Sidney S. Levine, respondent.

*Clara Tepper* (*Leonard H. Rosen* on the brief), for Max Katz of New York City, respondent.

McNally, J.  This is an appeal from so much of an order and decree of the Surrogate's Court, Bronx County, which directed that moneys payable to Max Katz of Toronto be paid to Max Katz of New York as assignee of said Max Katz of Toronto by reason of a written assignment by him executed dated January 9, 1957.  Max Katz of New York was joined as a respondent on this appeal pursuant to the order of this court (12 A D 2d 452).

Anna Brener died leaving a will in which a part of the estate was bequeathed to a relative, Max Katz.  A proceeding was had to determine which Max Katz was intended to be the legatee.  Max Katz of New York was successful.

The will contained bequests to other relatives of the decedent.  A proceeding was instituted in the Surrogate's Court to determine whether or not these bequests had lapsed.  If the bequests did not lapse, then Max Katz of Toronto, as an heir of one of the legatees, was entitled to receive part of the legacy.  The said bequests were upheld and thereby Max Katz of Toronto became entitled to a share of the estate.  However, on January 9, 1957, for a consideration of $200, he assigned his interest in the estate to Max Katz of New York.

Appellant contends the assignment was invalid because it was improperly induced by an attorney, also an executor of the estate.  Max Katz of Toronto claims that he came to New York because of the following letter written by Sidney S. Levine, the attorney in question who was also an executor of the estate:

"July 23, 1956

"Dear Mr. Katz:

"Your cousin, Max Katz, who has been out on the Coast for quite a while, came in to see me, and we were reminiscing about his victory in the Will contest in the Anna Brener estate.

"If you happen to be in New York City at any time, drop in to see me.

"Very truly yours,
"Sidney S. Levine".

Although the letter was written in July, 1956, Max Katz of Toronto did not come to New York until January, 1957.  It was during this visit that he saw Max Katz of New York and in turn saw Mr. Levine.  At that time he was informed by Mr. Levine that he had no rights whatsoever in the estate and that Max Katz of New York would give him $200 to reimburse him for expenses in the prior proceeding.  Thereupon, he executed the assignment in question.  Mr. Levine told the appellant:  "'As far as I can see, you have no claim whatsoever.

He [Max Katz of New York] is the sole surviving legatee. In my opinion, everything in the estate goes to him.' And that was what I told him; that was the law as I saw it at that time."

On this record we find that the said assignment by Max Katz of Toronto was intended to transfer and is limited to his rights as a named legatee under the last will and testament of the decedent herein. This was the subject matter of the litigation adverted to in the letter of the executor to the appellant dated July 23, 1956. His rights as heir of the deceased legatee of the decedent herein were not the subject of the negotiations antedating the assignment and to the extent it purports to assign such rights it is the product of a mutual mistake.

That the mistake relied on may be one of law does not affect the result. (*Haviland* v. *Willets*, 141 N. Y. 35; Civ. Prac. Act, § 112-f.) *Haviland* involved a release executed by the plaintiff, decedent's sole surviving heir, induced by post-mortem negotiations between the plaintiff and the executor. The court there said (p. 47) the "executor owed the duty of impartial justice to the legatees as between each other whenever his conduct necessarily affected their relative rights". There the release by its content, apart from its legal effect, cut off plaintiff's rights in respect of a lapsed legacy consequent on the death prior to the decedent's of one of two nephews of his wife named in his will as legatees. In *Haviland* the trial court found the executor, a layman, originally proceeded on the assumption that the legacy did not lapse but was informed otherwise by his counsel prior to the execution of the release by the plaintiff. Although the evidence there established the plaintiff was told by counsel for the executor prior to the execution of the release that he was vested with the lapsed legacy, nevertheless the Court of Appeals held (p. 49) the evidence established he was inattentive and negligent, and did not exclude "the point of view from which Barclay [plaintiff] was all the time observing the proceedings, and his mental attitude towards what was transpiring before him. He was inattentive and even negligent, but it was because he thought money was being given to him, that he was parting with nothing, that no diligence on his side was needed, and that all the precautions were required for the executor and to protect him in the arrangement".

In the case at bar the assignment does not direct appellant's attention to his rights as heir of the deceased legatee and the record abundantly establishes the sole subject of negotiation involved his rights as named legatee. Assuming, although the basis therefor does not appear, that the executor, an attorney, who prepared and to a large extent induced the execution of the

assignment, was of the opinion the appellant had no rights in respect of the legacy of the deceased legatee, nevertheless, in the discharge of his duty of "impartial justice to the legatees", the executor was required at the very least to inform the appellant of the facts giving rise to the appellant's legal rights, if any. It is patent the appellant's attention was drawn exclusively to his rights as named legatee upon his execution of the assignment and he was not informed or aware of his rights as heir of the deceased legatee.

The resettled decree dated June 9, 1959, amending the final account of the executors, should be modified, on the law and on the facts, to provide that the assignment, dated January 9, 1957, is limited to the alleged rights of the assignor as legatee under the last will and testament of the decedent herein, and to direct payment to Max Katz of Toronto of his share as heir of the deceased legatee of said decedent, and, as so modified, affirmed, with costs to the appellant payable by Max Katz of New York.

VALENTE, J. (dissenting). Resolution of the question of the effectiveness of the assignment to cover the rights of the assignor as an heir of a deceased legatee rested upon the credibility of the assignor's testimony and that of other witnesses at the hearing before the learned and experienced Surrogate. In *Amend* v. *Hurley* (293 N. Y. 587, 594) the court said: "The advantages of the trial court who saw and heard the witnesses should be considered and, when truth hangs upon the credibility of witnesses, his decision should be given the greatest weight (*Boyd* v. *Boyd*, 252 N. Y. 422, 429; *York Mortgage Corp.* v. *Clotar Const. Corp.*, 254 N. Y. 128, 134; *Smith* v. *Smith*, 273 N. Y. 380, 383)." (See, also, *Loeb* v. *Dry Dock Sav. Bank*, 4 A D 2d 190, 191, affd. 4 N Y 2d 810.)

The determination that appellant had assigned all interest in the estate and had not been imposed upon at the time of the execution of the assignment is supported by the record. Nor was there any convincing proof of unilateral mistake induced by respondent. Having finally disposed of any interest in the estate for an adequate consideration, appellant should not be permitted to reopen the transaction because subsequent events disclosed that he would have a claim as an heir for a deceased legatee. I, therefore, dissent and would affirm the order.

RABIN and EAGER, JJ., concur with McNALLY, J.; VALENTE, J., dissents and votes to affirm in opinion in which BREITEL, J. P., concurs.

Resettled decree, amending the final account of the executors, modified, on the law and on the facts, to provide that the assign-

ment, dated January 9, 1957, is limited to the alleged rights of the assignor as legatee under the last will and testament of the decedent herein, and to direct payment to Max Katz of Toronto of his share as heir of the deceased legatee of said decedent, and, as so modified, affirmed, with costs to the appellant payable by Max Katz of New York. Settle order on notice.